**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BYTEDANCE, INC, and DOES 1 through 20, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Yintao Yu

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* CIVIC CENTER COURTHOUSE

400 McAllister St. San Francisco, CA 94102-4515

CASE NUMBER:
*(Número del Caso):*
CGC-22-603019

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Yintao Yu, 3245 Geary Blvd, San Francisco, CA 94118, (415) 917-3178

DATE: **DEC 02 2022**   CLERK OF THE COURT   Clerk, by _____, Deputy
*(Fecha)*   *(Secretario)*   CAROLYN BALISTRERI   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [x] on behalf of *(specify):* BYTEDANCE, INC, and DOES 1 through 20, inclusive.
   under: [x] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]   [ Clear this form ]

Yintao Yu
3245 Geary Blvd., #591846,
San Francisco, CA 94118
Email: roger@rogeryu.org

*Plaintiff in Pro Per*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/17/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

# THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

CGC-22-603019

| | |
|---|---|
| YINTAO YU, | Case No. _____ |
|         Plaintiff, | **COMPLAINT FOR DAMAGES** |
| | **JURY TRIAL DEMANDED** |
|    vs. | |
| BYTEDANCE, INC, and DOES 1 through 20, inclusive, | |
|         Defendants. | |

COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiff YINTAO YU complains and alleges as follows:

## NATURE OF THE CASE

1.    This case arises out of Plaintiff Yintao "Roger" Yu's termination of employment from Defendant BYTEDANCE, INC., after he had engaged in legally-protected whistleblowing activity, opposed disability discrimination, and shortly after his return from protected medical leave.

## PARTIES

2.    Plaintiff Yu was an employee of Defendant ByteDance, Inc. from approximately August 2017 until his termination in November 2018.  He is a resident of California.

3.    Upon information and belief, Defendant ByteDance, Inc., is a Delaware corporation, whose primary place of business is San Francisco County, California.

4.    The true names and capacities of Defendants named herein as Does 1 through 20, whether individual, corporate, associate or otherwise, and the true involvement of Defendants sued herein as Does 1 through 20, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to show the true names, capacities, and involvement of Does 1 through 20 when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a "Doe" is responsible in some manner for the events and happenings referred to herein, and that Plaintiff's injuries and damages as hereinafter set forth were proximately caused by said Defendants.

5.    Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein is or was the agent, employee, partner and/or representative of one or more of the remaining Defendants, and each of them was at all times acting within the purpose and scope of such agency and employment.  Plaintiff is further informed and believes that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants.

## JURISDICTION AND VENUE

6.    Venue is proper in this judicial district pursuant to California Code of Civil Procedure § 395(a) and California Government Code § 12965.  Defendant ByteDance, Inc. is

1  registered for business tax certificate with the Office of the Treasurer and Tax Collector, City and

2  County of San Francisco.  Defendant ByteDance, Inc. resides in and transacts business in the

3  County of San Francisco, and is within the jurisdiction of this Court for the purposes of service of

4  process.

5  **FACTS COMMON TO ALL CAUSES OF ACTION**

6  7.  Plaintiff Yu was hired by Defendant ByteDance, Inc. ("ByteDance" or

7  "Defendant") on or around June 7, 2017, and began working in August 2017.  In addition to his

8  base salary and the option to purchase 220,000 shares of ByteDance stock, Mr. Yu's employment

9  agreement also entitled him to $600,000, to be "paid within 30 days since the offer was signed,"

10 for the IP from his company Tank Exchange.

11  8.  Within the first 30 days of receiving the offer letter, Mr. Yu spoke with

12 ByteDance's hiring manager and in-house counsel.  They told Mr. Yu that ByteDance had

13 concerns about paying him the $600,000 purchase price for Tank Exchange's intellectual

14 property without assurances that he would remain with ByteDance for the long term.

15 ByteDance's representatives encouraged him to sign a multi-year term employment agreement to

16 ensure his continued employment at ByteDance.  Ultimately, the parties agreed upon a 2-year

17 term agreement that was binding on both parties and which superseded the "at will" provision

18 contained in his earlier agreement.  On a visit to Beijing, Mr. Yu signed the employment contract.

19 ByteDance's representatives told him that he would receive a copy of this agreement, but it was

20 never shared with him.  Under the terms of the supplemental employment agreement, the

21 employment relationship was set to last until August 2019, unless Mr. Yu was terminated "for

22 cause."

23  9.  Shortly after beginning his employment, Mr. Yu became aware that ByteDance

24 had for years engaged in a worldwide scheme to steal and profit from the copyrighted works of

25 others.  The effort involved the use of software to strip copyrighted material from competitor's

26 websites — chiefly, Instagram and Snapchat — and populate its own video services with these

27 videos in an effort to make its own services appear more popular to end users.  These actions

28

were taken without the permission of the content creators and represented an unlawful effort to gain an edge against entrenched online video hosting websites.

10.     Upon learning of this program, Mr. Yu was troubled by ByteDance's efforts to skirt legal and ethical lines, not to mention the tremendous class action liability that copyright theft of this magnitude could create for the company.  It was his understanding that stripping copyrighted material from competitors' websites without the creator's permission violated the Digital Millennium Copyright Act and other laws protecting copyrighted works.  Mr. Yu raised these concerns with Wenjia Zhu, formerly Senior VP of Engineering and current Global TikTok R&D Chief at ByteDance, numerous times, as early as October 2017 and again in February and March 2018.  Mr. Zhu reports directly to ByteDance's CEO Yiming Zhang.  When informed of Mr. Yu's concerns with the program, Mr. Zhu was dismissive of them, and the copyright infringement continued unabated.

11.     In addition, on or around December 2017, Mr. Yu learned of efforts to terminate a U.S. based employee, Witness A,[1] who suffered from depression.  Witness A, who had demonstrably strong performance, had recently requested time off to address her medical condition.  Although Witness A's direct manager, Peiyu "Peggie" Li, was satisfied with her performance and had recently given Witness A a score of "Meets Expectation" on her latest performance review, her skip level manager, Ying Zhi, was not as accommodating.  Without Ms. Li's knowledge, Ms. Zhi had Witness A's performance score lowered to "Improvement Needed," and had informed HR to fire Witness A upon the formal release of the ratings.  Upon learning of this change, Mr. Yu confronted Ms. Zhi, who admitted that she had made the change because she did not like Witness A taking time off work to address her depression and that she viewed her as a "burden" she "wanted to get rid of."  Ms. Zhi told him that due to Witness A's medical condition, her "cost of management was too high."  It is Mr. Yu's understanding that terminating Witness A if she received a rating of "meets expectations" or above would violate ByteDance

---

[1] Plaintiff is not disclosing Witness A's name at this time to protect the privacy of the witness.  Plaintiff will provide Witness A's name to ByteDance in the course of discovery and under a protective order.

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  policy, which is why Ms. Zhi had intervened to lower her score.  Mr. Yu was shocked by Ms.

2  Zhi's admission and requested that she reconsider.  However, Ms. Zhi responded that she "won't

3  even consider keeping [Witness A].  Her cost of management is way too high."  Following this

4  conversation, Mr. Yu complained to Wei "Ronnie" Hua, ByteDance's Head of HR, about the

5  legality of Ms. Zhi's actions.

6        12.     Ultimately, following Mr. Yu's reporting of the incident to HR, the company

7  decided not to terminate Witness A.  However, Ms. Zhi's manager, Nan Zhang, was unhappy

8  with Mr. Yu's decision to intercede on Witness A's behalf, particularly given the fact he did not

9  even work in her department.  Mr. Yu was later informed that several of Ms. Zhang's direct

10  reports viewed his actions as a challenge to Ms. Zhang's leadership and authority.  Ms. Zhang

11  later became the general manager of ByteDance's entire video-"IES" division — the department

12  in which Mr. Yu worked — and was in a position to retaliate against Mr. Yu for his actions.

13        13.     On or around March 2018, in consultation with his doctor, Mr. Yu was required to

14  take his own medical leave for approximately seven months.  On July 18, 2018, Mr. Yu mailed

15  three letters to various supervisors at ByteDance notifying them that, upon consultation with his

16  doctor, he expected to be able to return to work on September 11, 2018.  ByteDance claims to

17  have mailed Mr. Yu a notice of termination on July 26, 2018, purportedly due to a reduction in

18  force.  ByteDance also claims that on July 27, Bytedance e-mailed Mr. Yu a copy of the

19  termination notice.  Mr. Yu never received any of these notices and ByteDance never called him

20  to notify him of his termination, even though the company acknowledges receiving his requests

21  to return to work.[2]

22        14.     In October 2018, Mr. Yu was finally cleared to return to work by his doctor.

23  However, upon returning to the office for the first time, he was told he did not "need to come to

24  work now" and that the company "will contact you later."  Mr. Yu remained on ByteDance

25  _____

26      [2] Mr. Yu never received either the written or electronic versions of these notices because the company sent them to old home addresses.  The termination letter was sent to Mr. Yu's former address in Seattle, even though his paystubs listed his current address in Palo Alto.

27  Similarly, instead of using his current e-mail address, the company sent the termination notice to old e-mail accounts he no longer used.  There is no record of the company attempting to call Mr. Yu to notify him of his termination.

28

1  payroll through November 2018 and the first tranche of equity under his stock option award from

2  the company should have vested on August 30, 2017, though ByteDance never vested these

3  shares.  In November 2018, Mr. Yu was terminated.

<strong><u>PROCEDURAL HISTORY</u></strong>

5      15.    On July 25, 2019, Plaintiff filed a complaint of discrimination with California's

6  Department of Fair Employment and Housing (DFEH), pursuant to the California Fair

7  Employment and Housing Act ("FEHA"), Government Code section 12900 *et seq.*

8      16.    Pursuant to the Emergency Rules Related to COVID-19, Emergency Rule 9(a),

9  the statute of limitations on Plaintiff's claims was tolled an additional 178 days, until January 19,

10 2021.

11     17.    The Parties have entered into a series of Tolling Agreement, whereby the statute

12 of limitations for Plaintiff's claims was tolled through and including November 17, 2022.

<strong><u>LEGAL CLAIMS</u></strong>

<strong><u>FIRST CAUSE OF ACTION</u></strong>

<strong>(Retaliation in Violation of Labor Code § 1102.5)</strong>

16     18.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

17 of the preceding paragraphs as though fully set forth herein, and alleges as follows:

18     19.    At all times relevant to this Complaint, Defendant has been subject to the

19 requirements of California Labor Code § 1102.5, which applied to Plaintiff as an employee of

20 Defendant.

21     20.    Defendant violated Section 1102.5 by abruptly terminating Plaintiff's employment

22 in retaliation for his reporting and refusals to participate in activity that violated federal and state

23 policy against misappropriating copyrighted material, including the Digital Millennium

24 Copyright Act and other laws protecting copyrighted works.  *See* California Civil Code Sec. 3426

25 *et seq.*  In addition, the confidential and proprietary information, including copyrighted material,

26 that Defendant sought to misappropriate were of significant economic value and Plaintiff refused

27 to participate in any action that could reasonably constitute grand theft.  *See* California Penal

28 Code § 487.

5<br>COMPLAINT FOR DAMAGES AND JURY DEMAND

21.     In addition, at all times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and was fully binding upon Defendant. Government Code § 12940(a) prohibits an employer from discharging or discriminating against an employee because of a disability or because they are regarded as having a disability. Defendant violated Section 1102.5 by abruptly terminating Plaintiff's employment due to his taking medical leave and for reporting and objecting to Defendant's discrimination against Witness A on the basis of her medical condition. Further, Defendant retaliated against Plaintiff for disclosing information that he had reasonable cause to believe constituted a violation of California's FEHA to a person with authority over him, or another employee who had the authority to investigate, discover, or correct the violation or noncompliance.

22.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred other economic losses, along with attorney's fees and litigation costs.

23.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

24.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Disability Discrimination: Violation of Government Code § 12940(a))

25.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

26.     At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, *et seq.*, was in full force and effect and was fully binding upon Defendant. Cal. Gov't Code § 12940(a) prohibits an employer from discharging an

employee because of a physical or mental disability or because he is regarded as having a physical or mental disability.

27.   Plaintiff was a qualified individual with a disability, able to perform the essential job duties of his position, with reasonable accommodation.  ByteDance's termination of Plaintiff's employment because of his taking medical leave and need for treatment, violated Government Code § 12940(a).

28.   As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

29.   As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

30.   Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

### THIRD CAUSE OF ACTION

**(Failure to Prevent Discrimination:  Violation of Government Code § 12940(k))**

31.   Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

32.   At all times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and fully binding upon Defendant.  Plaintiff was a member of a group protected by that statute in that he was an employee with a known medical condition and/or physical disability who made a request for a reasonable accommodation to treat his medical condition and/or disability.

33.   Defendant violated Government Code § 12940(k) because Defendant failed to take all reasonable steps necessary to prevent discrimination from occurring.  Among other

things, Defendant failed to train and adequately supervise its employees in order to ensure that these employees were not violating FEHA in their treatment of other employees.

34.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

35.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

36.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Government Code § 12940(h))

37.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

38.     Government Code section 12940(h) makes it an unlawful employment practice for an employer to discriminate against any person because the person has opposed any practices forbidden under the FEHA, including discrimination on the basis of a disability.

39.     Plaintiff opposed and protested ByteDance's discrimination against Witness A and attempts to eliminate her position.  He made these complaints to HR and Witness A's managers.

40.     In response to his complaints, ByteDance terminated his employment.

41.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

42.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

1   Plaintiff's damage in an amount to be proven at the time of trial.

2       43.     Defendant committed the acts herein despicably, maliciously, fraudulently, and

3   oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

4   amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.

5   Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to

6   proof.

7                           **FIFTH CAUSE OF ACTION**

8       **(Interference with CFRA Rights:  Violation of Government Code § 12945.2(t))**

9       44.     Plaintiff re-alleges and incorporates herein by reference each and every allegation

10  of the preceding paragraphs as though fully set forth herein, and alleges as follows:

11      45.     Defendant was subject to the provisions of the CFRA because Defendant

12  employed at least 50 part-time or full-time employees.  Plaintiff was entitled to the benefits of the

13  CFRA because he worked more than twelve months for Defendant and had at least 1250 hours of

14  service in the year preceding his CFRA leave.  Defendant employed at least 50 employees within

15  75 miles of San Francisco during the relevant time period.

16      46.     The CFRA requires an employer to grant leave to an employee to care for the

17  employee's own serious health condition.  The CFRA also requires the employer to reinstate the

18  employee to the same or a comparable job upon completion of the leave.

19      47.     Defendant violated Government Code § 12945.2(t) by failing to reinstate the

20  employee to the same or a comparable job upon completion of the leave.

21      48.     Defendant further violated Section 12945.2(t) by terminating Plaintiff following

22  his return from medical leave.

23      49.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

24  Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment

25  benefits and has incurred other economic losses.

26      50.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

27  Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

28  Plaintiff's damage in an amount to be proven at the time of trial.

COMPLAINT FOR DAMAGES AND JURY DEMAND

51.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## SIXTH CAUSE OF ACTION

### (Retaliation in violation of the CFRA:  Violation of Government Code § 12945.2(l))

52.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

53.     The CFRA requires employers to grant leave to employees to care for the employee's own serious health condition.  The CFRA also requires the employer to reinstate the employee to the same or a comparable job upon completion of the leave.

54.     Defendant violated Government Code § 12945.2(l) by failing to reinstate Plaintiff to the same or a comparable job upon completion of the leave.

55.     Defendant violated Government Code § 12945.2(l) by terminating Plaintiff following his return from medical leave.

56.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred other economic losses.

57.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

58.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

10

## SEVENTH CAUSE OF ACTION

### (Interference with FMLA Rights:  Violation of 29 U.S.C. § 2615(a)(1))

59.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

60.     Defendant was subject to the FMLA because it employed at least 50 part-time or full-time employees.  Defendant employed at least 50 employees within 75 miles of San Francisco during the relevant time period.

61.     Plaintiff was entitled to the benefits of FMLA because he worked more than twelve months for Defendant and had at least 1250 hours of service in the year preceding his FMLA leave.

62.     The FMLA requires an employer to grant leave to an employee to care for the employee's own serious health condition.  Defendant violated 29 U.S.C. § 2615(a)(1) by terminating Plaintiff following his return from medical leave.  Plaintiff's taking of FMLA-protected leave constituted a negative factor in the decision to terminate him.

63.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

64.     Plaintiff is entitled to liquidated damages pursuant to 29 U.S. Code § 2617(a)(1)(A).

## EIGHTH CAUSE OF ACTION

### (Breach of Contract)

65.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

66.     On or around September 30, 2017, Plaintiff and Defendant entered into a written stock incentive plan, whereby Plaintiff was awarded 220,000 shares in Defendant vesting over a four-year period.  Shortly thereafter, the Parties signed a 2-year term supplemental employment agreement in order to ensure Plaintiff's continued employment at Defendant.  The supplemental employment agreement lasted until August 2019, unless Mr. Yu was terminated "for cause."

67.     Plaintiff completed all conditions necessary to satisfy his obligations under his operative employment agreement by continuing to work for Defendant until he was terminated without cause.

68.     The first and second tranches of options under the incentive plan were set to vest on August 30, 2017 and 2018, respectively, though ByteDance never vested these shares. Defendant breached the contract by failing to award Plaintiff the options owed to him under the incentive plan.

69.     Accordingly, Plaintiff is entitled to the compensation owed under the incentive plan, including the shares already vested at the time of his termination.

## NINTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

70.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

71.     Plaintiff's employment agreement and stock incentive plan contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the actual benefits of those contracts.

72.     Plaintiff performed all of the duties and obligations required of him by Defendant during his employment, including those duties and obligations that would entitle Plaintiff to receive the compensation described in the employment agreement and stock incentive plan.

73.     Defendant breached the implied covenant when it took actions to prevent Plaintiff from earning their full compensation owed under these agreements.

74.     Defendant's termination of Plaintiff was done in bad faith.

75.     As a result of Defendant's bad faith and unfair dealing in performing the terms of the employment agreement and stock incentive plan, Defendant is liable for breaching the covenant of good faith and fair dealing inherent in those agreements.

76.     Accordingly, Plaintiff is entitled to the compensation owed under the employment agreement and stock incentive plan, included continued stock option vesting for the term of the

agreements, and the compensation he lost because Defendant unlawfully terminated these contracts.

**TENTH CAUSE OF ACTION**

**(Wrongful Termination In Violation Of Public Policy)**

77.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

78.     Plaintiff's employment was terminated by Defendant in violation of fundamental public policies of the State of California, including without limitation, the right to refrain from participating in unlawful conduct (or conduct reasonably believed to be unlawful).

79.     The conduct detailed herein was wrongful and in violation of fundamental public policies of the State of California as reflected in laws that include, without limitation, the California Labor Code, state and federal copyright laws, California Business & Professions Code § 17200, and the California Penal Code.

80.     Defendant's actions were willful and malicious and were committed with the wrongful intent to injure Plaintiff and in reckless disregard of Plaintiff's rights.

81.     As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages that include his unvested stock options, loss of salary, bonuses, and other losses along with attorney's fees and litigation costs.

**ELEVENTH CAUSE OF ACTION**

**(Unfair Business Practices – Business & Professions Code Section 17200)**

82.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

83.     California Business & Professions Code § 17200 prohibits any unlawful, unfair *or* fraudulent business practices.  By promising Plaintiff valuable equity and then firing him for an unlawful reason and taking back his unvested options, Defendant has engaged in unlawful, unfair, and fraudulent business practices.  Plaintiff is entitled to restitution of the ByteDance stock options that rightfully belong to him but which Defendant has deprived him of possessing.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Yu prays for judgment against ByteDance as follows:

1.  For compensatory damages, including but not limited to, lost back pay (including, but not limited to, salary and bonus wages), equity, and fringe benefits and future lost earnings, equity, and fringe benefits, emotional distress, and legal interest, according to proof as allowed by law;

2.  Liquidated damages as allowed by law;

3.  For injunctive relief, including reinstatement and a prohibition on further discrimination or retaliation;

4.  For punitive damages as allowed by law;

5.  For an award to Plaintiff of costs of suit incurred herein and reasonable attorney's fees;

6.  For prejudgment interest and post-judgment interest as allowed by law;

7.  For an injunction to prevent future violations of Government Code § 12940; and,

8.  For an award of such other and further relief as the Court deems just and proper.

DATED:  November 17, 2022                    Respectfully submitted,

By: *Yintao Yu*
Yintao Yu (Nov 17, 2022 14:55 PST)

YINTAO YU
*Plaintiff in Pro Per*

14

1

2

3

4

5

6

7

8

9

0

1

2

3

4

5

6

7

8

9

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of each and every cause of action so triable.


DATED:  November 17, 2022                    Respectfully submitted,



By:  *Yintao Yu*
     Yintao Yu (Nov 17, 2022 14:55 PST)
     YINTAO YU
     *Plaintiff in Pro Per*

15
COMPLAINT FOR DAMAGES AND JURY DEMAND



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.   In ADR, trained, impartial people decide disputes or help parties decide disputes themselves.  They can help parties resolve disputes without having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

## 1)   MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*)

FOR COURT USE ONLY

TELEPHONE NO.:

ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____ |
| | **DEPARTMENT 610** |

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐ **Other ADR process (describe)** _____

2) **The parties agree that the ADR Process shall be completed by (date):** _____

3) **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____
Name of Party Stipulating

_____
Name of Party Stipulating

_____
Name of Party or Attorney Executing Stipulation ·

_____
Name of Party or Attorney Executing Stipulation

_____
Signature of Party or Attorney

_____
Signature of Party or Attorney

☐ Plaintiff ☐ Defendant ☐ Cross-defendant

☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Dated: _____

Dated: _____

☐ *Additional signature(s) attached*

ADR-2  10/18                    STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CASE NUMBER: CGC-22-603019  YINTAO YU VS. BYTEDANCE, INC ET AL

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**   **APR 19, 2023**

**TIME:**   **10:30 am**

**PLACE:**   **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.  However, it would facilitate
the issuance of a case management order   **without an appearance**   at the case
management conference if the case management statement is filed and served twenty-five
days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.   **This case is**
**eligible for electronic filing and service per Local Rule 2.11.  For more information,**
**please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place**
**of filing a written response to the complaint. You must file a written response with the**
**court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN**
**MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR**
**OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package
on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be
accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a
paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the ADR Information Package prior to filing
the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**