1  Demery Ryan, Bar No. 217176
   dryan@littler.com
2  David S. Maoz, Bar No. 233857
   dmaoz@littler.com
3  Alexandra Bernstein, Bar No. 327492
   abernstein@littler.com
4  LITTLER MENDELSON P.C.
   2049 Century Park East
5  5th Floor
   Los Angeles, California 90067.3107
6  Telephone:    310.553.0308
   Fax No.:      800.715.1330
7
   Gregory G. Iskander, Bar No. 200215
8  giskander@littler.com
   LITTLER MENDELSON, P.C.
9  Treat Towers
   1255 Treat Boulevard
10 Suite 600
   Walnut Creek, California 94597
11 Telephone:    925.932.2468
   Fax No.:      925.946.9809
12
   Attorneys for Defendant
13 BYTEDANCE INC.

14
15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17
   YINTAO YU,                              Case No.  4:23-cv-00707-KAW
18
                  Plaintiff,               **DECLARATION OF JAMES LIU IN
19                                         SUPPORT OF DEFENDANT'S
        v.                                 MOTION TO COMPEL
20                                         ARBITRATION AND DISMISS
   BYTEDANCE, INC., and DOES 1 through 20, PROCEEDINGS OR IN THE
21 inclusive,                              ALTERNATIVE, STAY
                                           PROCEEDINGS PENDING
22                Defendants.              COMPLETION OF ARBITRATION**

23                                         Date:      May 4, 2023
                                           Time:      1:30 P.M.
24                                         Judge:     Magistrate Judge Kandis A.
                                                        Westmore
25                                         Dept:      TBD

26                                         Trial Date: None Set
                                           Complaint Filed:   November 17, 2022
27

28

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107

DECLARATION OF JAMES LIU
CASE NO. 4:23-CV-00707-KAW

**DECLARATION OF JAMES LIU**

I, JAMES LIU, declare as follows:

1.  I am an employee of ByteDance Inc. ("BDI" or "Defendant") and have been since August 3, 2020. My current title is HR Operations LifeCycle Lead, and my job duties include implementing Company human resources policies and supporting employees in the work environment, including onboarding, implementing personnel changes such as transfers, and maintaining personnel files. My job duties also include maintaining and reviewing company and human resource records. I am over 18 years of age and I have personal knowledge of the facts set forth in this declaration, except such facts that are made upon information and belief, and, if called upon to do so, could and would competently testify thereto.

2.  In my role as HR Operations LifeCycle Lead, I am familiar with and have access to BDI's business records, such as personnel files and employees' employment information and records (including, title, duties, dates of employment, assignment dates, wage rates and increases, performance evaluations, disciplinary actions taken and onboarding and termination documentation, among other information) which are created at or near the time of relevant events, regularly created as part of BDI's practices and employees' employment, and maintained in the ordinary course of business. I have regularly created, maintained, and referenced such business records and information and have found these record keeping practices to be accurate and trustworthy. The business records I reviewed for purposes of this declaration include the personnel file (including the Employee Confidentiality and Inventions Assignment Agreement that Plaintiff entered into with BDI) that BDI maintains for Plaintiff Yintao Yu ("Plaintiff" or "Yu").

3.  BDI is a technology company that creates and supports mobile applications and social media/entertainment platforms that are used by consumers across the United States and around the world. BDI is engaged in interstate commerce in California, throughout other states in the United States of America, and throughout the world.

4.  Upon information and belief, BDI hired and onboarded Plaintiff as an employee of BDI on or around August 30, 2017.

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107

1

5.      Upon information and belief, as part of Plaintiff's onboarding on August 30, 2017, Plaintiff was provided various documents, including the Employee Confidentiality and Inventions Assignment Agreement ("CIAA"), including its Arbitration and Class Action Waiver provision ("Arbitration Provision"). Upon information and belief, Plaintiff acknowledged acceptance of the Arbitration Provision by signing his name at the end.  A true and correct copy of the CIAA containing the Arbitration Provision Plaintiff entered into with BDI, which was maintained in Plaintiff's personnel file in the normal course of business, is attached as **Exhibit A** and incorporated by way of this reference as though fully set forth herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this _17th_ day of February, 2023, at _San Jose_, _California_.

_James Liu_
JAMES LIU

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107

DECLARATION OF JAMES LIU
CASE NO. 4:23-CV-00707-KAW

# Exhibit A

[For California Employees]

## STATEMENT REGARDING EMPLOYEE CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

Attached to this statement is your Employee Confidentiality and Inventions Assignment Agreement (the "Agreement").

Please take the time to review the Agreement carefully. It contains material restrictions on your right to disclose or use, during or after your employment, certain information and technology learned by you during your employment.

[Bytedance Inc.] considers this Agreement to be very important to the protection of its business. It intends to enforce the terms of the Agreement and to pursue, appropriate, injunctions, restraining orders, and money damages, should you violate the Agreement.

It is a condition of your employment and certain payments and benefits to be provided to you by [Bytedance Inc.] and its affiliates that you execute this Agreement.

If you have any questions concerning this Agreement, you may wish to consult an attorney. The employees and agents of [Bytedance Inc.] and its affiliates are not authorized to, and will not, give you legal advice concerning this Agreement.

If you have read and understand the Agreement, and if you agree to its terms and conditions, please return a fully executed copy, retaining one copy for yourself.

1

**EMPLOYEE CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT**

This Employee Confidentiality and Inventions Assignment Agreement (the "Agreement") is entered into as of [August 30th, 2017] (the "Effective Date"), by and between [Bytedance Inc.] and its affiliates (collectively, "Employer") and [Yintao Yu] ("Employee").

As a condition of Employee's employment and certain payments and benefits to be provided to Employee by Employer, which Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, Employer and Employee hereby agree as follows:

**1.    Confidentiality.**

   A.    **Definitions.**

      1.    "Confidential Information" includes materials and information of and relating to Employer or its business, regardless of (i) whether marked as "confidential" or "proprietary," (ii) whether or not patentable, copyrightable, or registrable under any intellectual property laws or industrial property laws in the United States or elsewhere, and (iii) whether generated by Employer or its employees, consultants or agents or received by Employer from third parties such as clients/customers, suppliers, licensors, licensees, partners and collaborators of Employer.

          Confidential Information shall include information of a technical nature such as software, source code, trade secrets, processes, designs, methodologies, technology, know-how, algorithms, data, ideas, analytic insights, techniques, discoveries and inventions, as well as terms of agreements (including, without limitation, the terms of this Agreement), transactions and pending negotiations for transactions, financial information, client/customer and supplier information, marketing and product development plans, forecasts, and other information concerning Employer's or its clients'/customers' actual or anticipated products or services, business, research or development, or any information which is received in confidence by or for Employer from any other person.

          Employee understands that the foregoing is not an exhaustive list, and that Confidential Information also includes other information that is marked or otherwise identified as "confidential" or "proprietary," or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used. Confidential Information shall not include any information that (i) is or becomes publicly known through lawful means, or (ii) was rightfully in Employee's possession or part of Employee's general knowledge prior to Employee's employment by Employer, including any Employee Pre-Existing Intellectual Property (as defined in Section 2.A).

      2.    "Employer Materials" means any documents, media or other items that contain or embody Confidential Information, whether or not labeled

2

"confidential" or "proprietary." Employer Materials include blueprints, drawings, photographs, charts, graphs, notebooks, client/customer lists, software, computer disks, tapes or printouts, sound recordings and other electronic, digital, printed, typewritten or handwritten documents or emails, sample products, prototypes and models.

B.   **Employee Acknowledgments**.

   1.   Employee understands and acknowledges that, during the course of employment by Employer, Employee will have access to and learn about Confidential Information of and relating to Employer and its business and existing and prospective clients/customers, suppliers, investors and other associated third parties. Employee further understands and acknowledges that such Confidential Information and Employer's ability to reserve the Confidential Information for the exclusive knowledge and use of Employer is of great competitive importance and commercial value to Employer and third parties disclosing such information to Employer, and that improper use or disclosure of the Confidential Information by Employee might cause Employer and such third parties to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and/or criminal penalties.

   2.   Employee understands and agrees that Confidential Information developed by Employee in the course of Employee's employment by Employer shall be subject to the terms and conditions of this Agreement as if Employer furnished such Confidential Information to Employee in the first instance.

   3.   Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information, including the obligation not to use or disclose trade secrets of Employer, shall commence immediately upon Employee's first having access to such Confidential Information (regardless of when such Confidential Information is received) and shall continue during and after Employee's employment by Employer until such time as the Confidential Information shall become public knowledge, other than as a result of Employee's breach of this Agreement or breach by those acting in concert with Employee or on Employee's behalf.

C.   **Non-Disclosure Obligations.**

Employee agrees and covenants:

   1.   to treat all Confidential Information as strictly confidential and as the sole and exclusive property of Employer;

   2.   not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow Confidential Information to be disclosed, published, communicated or made available, in whole or part,

3

to any entity or person whatsoever and, in any event, not to anyone outside of the direct employ of Employer except as required in the performance of Employee's authorized employment duties to Employer or with prior consent of an authorized officer acting on behalf of Employer in each instance, but only to the extent of such duties or consent;

3. to comply with Employer's procedures and policies pertaining to the management and protection of Confidential Information and trade secrets, as such procedures and policies may be updated from time to time;

4. to use the Confidential Information only for the benefit of Employer and not to use or attempt to use any Confidential Information for Employee's own purposes or for any other purposes;

5. not to use or attempt to use any Confidential Information in any manner which may injure or cause loss either directly or indirectly to the Employer or its businesses, or which may be likely so to do;

6. to use all reasonable efforts to prevent the publication, disclosure or use of any Confidential Information in any way or any form not authorized hereunder;

7. to immediately notify the Employer of any suspected or actual unauthorized use, copying or disclosure of any Confidential Information by Employee or any other person;

8. allow the Employer to inspect any electronic device in Employee's possession or under Employee's control which is or was used by Employee in the course of Employee's employment in order for the Employer to satisfy itself of Employee's compliance with the terms of this clause C; and

9. upon the termination of Employee's employment, to immediately return or destroy, at Employer's sole option, all Employer Materials in Employee's possession and, at Employer's request, execute a termination certificate in the form set forth in Exhibit A attached hereto, stating that all such materials have been returned or destroyed and Employee's acknowledgement of its continuing obligations under this Section 1.

D. **Required Disclosures; Whistleblower Protection**. Notwithstanding any other provision of this Agreement (including Section 1.C), nothing in this Agreement shall be construed to prevent disclosure of Confidential Information to the extent required by law or a valid court order, provided that the Employee's disclosure does not exceed the minimum extent required by law or order and Employee provides prompt written notice of such requirement to an authorized officer of Employer and provides all assistance Employer reasonably requires to contest such disclosure. In addition, nothing in this Agreement shall be construed to prevent Employee from making any disclosure or communication protected by

4

law or to prohibit Employee from reporting possible violations of law to a governmental agency or entity or require Employee to seek authorization from Employer or to notify Employer if Employee makes such reports.

E.   **Defense of Trade Secrets Act**.   Under the U.S. Defend Trade Secrets Act (18 U.S.C. section 1833(b)(1)), Employee shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal and Employee does not disclose the trade secret except pursuant to a court order.

## 2.   **Ownership of Work Product**

A.   **Definitions.**

1.   "Intellectual Property Rights" means: all (i) trademarks and trademark rights, trade names and trade name rights, service marks and service mark rights, service names and service name rights, domain names and social media handles and all rights therein (together with the goodwill associated with any of the foregoing), (ii) patents and patent rights, (iii) copyrights and copyright rights, (iv) trade secret rights, rights of publicity, mask work rights, rights of privacy, Moral Rights (as defined in Section 2.D), data, database and software rights, and all other intellectual property rights and proprietary rights as may exist now or hereafter come into existence, regardless of whether such rights arise under the laws of the United States or any other jurisdiction or under any treaty or convention, and all registrations, applications, extensions, continuations, revisions, reissues, and renewals in connection with any of the foregoing, as well as all rights of priority and all rights to sue for past, present and future infringement, misappropriation, dilution, misuse or other violation of any of the foregoing, including for injury to goodwill, and to recover all proceeds relating to any of the foregoing, including licenses, royalties, income, payments, claims, damages (including attorneys' fees and expert fees) and proceeds from lawsuits under the laws of any jurisdiction worldwide.

2.   "Work Product" means all writings, works of authorship, technology, inventions, discoveries, designs, graphics, source code (including HTML and other code), trade secrets, ideas, analytic insights, improvements, developments, technology, formulas, compositions, algorithms, software, audio or video files or other types of work product that are authored, invented, created, developed, amended, conceived or reduced to practice by Employee individually or jointly with others during the period of Employee's employment by Employer or completed within one (1) year thereafter, with respect to any specific Work Product that was

5

substantially begun during the course of Employee's period of employment by Employer and (i) was created using Employer's resources or (ii) relates in any way to the business or contemplated business, research or development activities of Employer (regardless of when or where the Work Product is prepared or whose equipment or other resources are used in preparation of such Work Product), including in any case all printed, physical and electronic copies and other tangible embodiments and notes or materials related thereto. Work Product shall not include any Employee Pre-Existing Intellectual Property.

B.  **Disclosure and Ownership.** Employee hereby acknowledges and agrees that all Confidential Information, Employer Materials and Work Product shall be the sole and exclusive property of Employer to the maximum extent permitted by law. Employee agrees to disclose fully in writing all Work Product to Employee's immediate supervisor or as otherwise designated by Employer promptly following the creation or development thereof. Employee agrees that, to the maximum extent permitted by applicable law, all Work Product and all Intellectual Property Rights therein and thereto shall be the sole and exclusive property of Employer. Employee further acknowledges and agrees that all of the Work Product consisting of copyrightable subject matter, including any computer program, programming documentation, and other work of authorship is "work made for hire" as defined in in the Copyright Act of 1976 (17 U.S.C. §101), as amended), and such copyrights are therefore owned by Employer. To the extent that all worldwide rights, title and interests, including all Intellectual Property Rights, in and to any Work Product do not, by operation of law or otherwise, vest solely and exclusively in Employer, Employee hereby irrevocably assigns and transfers solely and exclusively to Employer (by way of present assignment of existing and future rights), all Work Product and all worldwide rights, title, and interests, including all Intellectual Property Rights, in and to such Work Product, free and clear of any liens and other encumbrances and without reservations of any kind. Each such assignment and transfer shall be deemed effective as of the date that such Work Product is first created or developed or otherwise reduced to practice. Employee understands and agrees that the foregoing assignment includes a present conveyance to Employer of ownership of Work Product and Intellectual Property Rights that are not yet in existence.

C.  **Employee Pre-Existing Intellectual Property.**

1.  Employee has attached hereto as Exhibit B, a complete list of all existing Intellectual Property Rights and writings, works of authorship, technology, inventions, discoveries, designs, graphics, source code (including HTML and other code), trade secrets, ideas, analytic insights, inventions, improvements, developments, technology, formulas, compositions, algorithms, software, audio or video files or other work product or materials to which Employee claims ownership (whether partial or in its entirety) separate from Employee's employment by Employer as of the date of this Agreement and which relate, directly or indirectly, to

6

Employer's existing or proposed business, products, or research and development (the "Employee Pre-Existing Intellectual Property"). If no list is attached to this Agreement, Employee represents and warrants that there is no such Employee Pre-Existing Intellectual Property. Employee will inform Employer in writing, and obtain Employer's express written permission, before incorporating any Employee Pre-Existing Intellectual Property into any Work Product or otherwise utilizing such Employee Pre-Existing Intellectual Property in the course of Employee's employment with Employer.

2.     To the extent any Work Product includes, is based on, or is a derivative or improvement of, or cannot reasonably be made, used, imported, sold, reproduced, distributed, modified, adapted, displayed, performed or otherwise exploited without using or violating any Employee Pre-Existing Intellectual Property or any other Intellectual Property Rights that Employee owns or licenses that have not been assigned hereunder, Employee hereby grants to Employer a worldwide, royalty-free, fully paid-up, perpetual, irrevocable, non-exclusive right and license (with the right to grant and authorize sublicenses through multiple levels of sublicensees) to exploit and exercise all such Pre-Existing Intellectual Property and other Intellectual Property Rights in support of Employer's making, having made, using, importing, offering for sale, selling, reproducing, distributing, modifying, adapting, preparing derivative works of, displaying, performing, and otherwise exploiting any such Work Product (including any embodiments, modifications, improvements and derivatives thereof.)   Each such license shall be deemed effective as of the date that such Work Product is first created or developed or otherwise reduced to practice.

D.     **Assignment or Waiver of Moral Rights and Other Intellectual Property Rights.** Any assignment of Work Product hereunder (and any ownership of a copyright as a work made for hire) includes all rights of paternity, integrity, modification, attribution, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights" anywhere in the world (collectively, "Moral Rights") and rights under section 987 of the California Civil Code. To the extent that any Moral Rights or any other Intellectual Property Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws in the various countries where such Moral Rights or such other Intellectual Property Rights exist, Employee hereby waives such Moral Rights and such other Intellectual Property Rights and consents to any action of Employer and its successors, assigns and (sub)licensees that would violate such Moral Rights and other Intellectual Property Rights in the absence of such consent. Employee shall confirm any such waivers and consents from time to time as requested by Employer. Additionally, to the extent any rights hereunder cannot be waived, Employee hereby grants to Employer, its successors and assigns, a perpetual, irrevocable, exclusive, worldwide, royalty-free license, with the right to grant and

7

authorize sublicenses through multiple tiers of sublicensees, to do anything the owner of such rights could do.

E.   **Statutory Limitations**.  Employer acknowledges that this Agreement does not apply, and no assignment made hereunder shall apply, to any Work Product which qualifies fully under section 2870 of the California Labor Code, a copy of which is attached as Exhibit C.

F.   **Execution of Documents**.  Employee agrees to perform all acts or refrain from taking action, as required, and agrees to execute and deliver to Employer any and all applications, oaths, declarations, affidavits, waivers, assignments and other documents and instruments as shall be deemed necessary or desirable by Employer (either during or after Employee's employment) to evidence, obtain, perfect, transfer to Employer or enforce any of the Intellectual Property Rights related to the Work Product or other rights in this Section 2, and Employer's ownership or other rights thereto, throughout the world and to render all lawful assistance in connection with the same. Employee agrees that the obligations set forth in this Section 2 shall continue after the termination or expiration of this Agreement and after the termination of Employee's employment for any reason.

G.   **Power of Attorney**.  Employee hereby irrevocably designates and appoints Employer and its duly authorized officers and agents, as Employee's agents and attorney-in-fact to act for and on Employee's behalf to execute and file any documents, applications or related findings and to do all other lawfully permitted acts to further the purposes set forth above in this Section 2, including the perfection of assignment and the prosecution and issuance of Intellectual Property Rights or other rights in connection with the Work Product and improvements thereto with the same legal force and effect as if executed by Employee. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

H.   **Open Source**.  Employee shall not incorporate any open source or other third party code into any Work Product or into any of Employer's products or services without Employer's prior written consent.

I.   **Records**. Employee shall maintain adequate, current, and accurate written records with respect to all Work Product. As between Employer and Employee, the records are and will be available to and remain the sole and exclusive property of Employer at all times.

## 3.   Publicity

Employee hereby consents to any and all uses and displays by Employer and its agents of Employee's name, voice, likeness, image, appearance and biographical information in or in connection with any printed, electronic or digital materials, including any pictures, audio or video recordings, digital images, websites, television programs, advertising, sales or marketing brochures, printed materials and computer media, throughout the world and at any time during or

after Employee's employment by Employer for all legitimate business purposes of Employer (the "Permitted Use"). Employee hereby forever releases Employer and its directors, officers, employees, representatives and agents from any and all claims, actions, damages, losses, costs, expenses and liability of any kind arising under any legal or equitable theory whatsoever at any time during or after the period of Employee's employment by Employer in connection with any Permitted Use.

**4. Non-Disparagement**

Employee agrees and covenants that Employee will not at any time, during or after Employee's employment, make, publish or communicate, or encourage others to make, publish, or communicate, to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning Employer or Employer's affiliates, any of their respective businesses, products, services or activities, or any of their respective current or former officers, directors, managers, employees or agents. This Section 4 shall not prohibit Employee from providing truthful testimony in response to a validly issued subpoena.

**5. Solicitation of Employees**

Employee agrees that any attempt on Employee's part to induce others to leave Employer's employ, or any effort by Employee to interfere with Employer's relationship with its other employees and consultants would be harmful and damaging to Employer. Employee agrees that during the term of Employee's employment and for a period of one year following the termination of Employee's relationship with Employer for any reason, whether voluntary or involuntary, Employee will not in any way, directly or indirectly, without prior written consent from the Employer, (i) induce or attempt to induce any employee or consultant of Employer to quit Employer; (ii) otherwise interfere with or disrupt Employer's relationship with its employees or consultants; (iii) solicit, entice, or hire away any employee or consultant of Employer; or (iv) hire, engage, or do business with any employee or consultant of Employer. The restrictions of this Section 5 shall apply to any former employee or consultant of Employer whose employment or engagement with Employer ceased less than six (6) months before the inducement, interference, hiring, or solicitation. This Section 5 shall survive the termination or expiration of this Agreement and the termination of Employee's employment for any reason.

**6. Former Employer Information; No Conflict; Compliance with Rules**

A. Employee represents that the performance of the terms of this Agreement and acting as an employee of Employer do not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Employee in confidence or in trust prior to employment by Employer, and Employee shall not disclose to Employer or induce Employer to use any confidential or proprietary information or materials belonging to any previous employers or others. Employee further agrees not to bring onto Employer's premises or transfer onto Employer's systems any unpublished document, proprietary information, or trade secrets belonging to any third party unless

disclosure to, and use by, Employer has been consented to in writing by such third party.

B.   Employee has not entered into and shall not enter into any agreement, either written or oral, in conflict with this Agreement or in conflict with Employee's employment with Employer.

C.   Employee shall comply with all rules and policies of Employer, as they may be amended from time to time, including with respect to access, safekeeping and return of Confidential Information, Employer Materials and Work Product.

## 7.   At-Will Employment

Employee agrees and understands that employment with Employer is "at-will," meaning that it is not for any specified period of time and can be terminated by Employee or by Employer at any time, with or without advance notice, and for any or no particular reason or cause. Employee understands and agrees that it also means that job duties, title and responsibility and reporting level, compensation and benefits, as well as Employer's personnel policies and procedures, may be changed at any time at will by Employer. Employee understands and agrees that nothing about the fact or the content of this Agreement is intended to, nor should be construed to, alter the at-will nature of Employee's employment by Employer.

## 8.   Notice of New Business; Authorization to Notify Others

Throughout Employee's employment and for a period of one year following the termination of Employee's relationship with Employer for any reason, whether voluntary or involuntary, Employee shall give advance notice to Employer of each new employment or other business activity Employee undertakes, which notice shall state the name and address of the person or entity for whom such activity is to be undertaken and the nature of Employee's business relationship(s) and position(s) with such person or entity. Employee agrees that Employer shall have the right to provide notice of Employee's obligations under this Agreement and/or a copy of this Agreement to any person or entity that is an employer or prospective employer of Employee, and any person or entity that may engage Employee to otherwise provide services or that otherwise may engage with Employee in a new business activity. Employee agrees to defend, indemnify and hold all employees, directors, and officers of Employer harmless from any and all claims, costs and damages in any way arising in connection with Employer providing notice of Employee's obligations under this Agreement and/or a copy of this Agreement to any person.

## 9.   Obligations and Remedies

A.   Employee agrees that an impending or existing violation of any of the covenants contained in this Agreement would cause Employer and its affiliates irreparable injury for which they would have no adequate remedy at law and agrees that Employee further agrees that nothing in this Agreement is intended to limit any remedy of Employer under the Uniform Trade Secrets Act. Employer shall be entitled to obtain injunctive relief prohibiting such violation, in addition to any other rights and remedies available to it in contract, at law, in equity, by statute or

10

otherwise. Employee agrees and consents that Employer shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. Employee also agrees that, in the event that Employee breaches any of the covenants contained in this Agreement or initiates legal action to challenge any such covenant, Employee shall be liable to Employer for attorneys' fees and costs incurred in any legal activity engaged in, defended by, or prosecuted by Employer to enforce such covenant or seek remedy of such breach.

B.  Employee's obligations under each of the provisions of this Agreement are independent, separable, and independently enforceable of each other and of any legal obligations that may exist between Employer and Employee. The real or perceived existence of any claim or cause of action of Employee against Employer, whether predicated on this Agreement or some other basis, shall not alleviate Employee of Employee's obligations under this Agreement and shall not constitute a defense to the enforcement by Employer of the restrictions and covenants contained herein. No right, power or remedy conferred upon a party in this Agreement shall be exclusive, and each such right, power and remedy shall be cumulative and in addition to every other right, power, or remedy, whether conferred in this Agreement, the Employment Agreement or any other agreement, or now or hereafter available at law, in contract, in equity, by statute or otherwise.

## 10.  General

A.  **Governing Law**. This Agreement will be governed and interpreted in accordance with the laws of California, without giving effect to provisions governing the choice of law.

B.  **Arbitration and Class Action Waiver**.  Employee agrees that any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association ("AAA") to be held in Los Angeles County, California before a single arbitrator, in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act, as modified by the terms and conditions contained in this paragraph. By signing this Agreement, Employee agrees to waive all rights to a jury trial and the right to pursue any class or representative claims to the maximum extent allowed by law. To the extent a class or representative claim may not be waived, Employee agrees to stay any such claims until after all claims subject to arbitration are fully resolved. The arbitrator shall be selected by mutual agreement of the parties or, if the parties cannot agree, then by striking from a list of arbitrators supplied by the AAA. The arbitrator shall issue a written opinion stating the essential findings and conclusions on which the arbitrator's award is based.  Employer will pay the arbitrator's fees and arbitration expenses and any

11

other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and attorney's fees and other expenses to the same extent as if the matter were being heard in court). This agreement to arbitrate has been freely negotiated and is mutually entered into between the parties. Employee fully understands and agrees that Employee is giving up certain rights otherwise afforded to Employee by civil court actions, including but not limited to the right to a jury trial.

C.   **Assignment; Beneficiaries.** The terms, provisions, covenants and agreements contained in this Agreement shall apply to, be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns. Employer may assign this Agreement to its successors or affiliates. Employee may not assign this Agreement. If this Agreement is assigned to an affiliate of Employer, or any other assignee, in connection with the transfer of Employee's employment to such member or other assignee, to the extent appropriate and on a going forward basis, references to "Employer" shall be deemed replaced with references to such new employer. Employee understands and agrees that the terms of this Agreement will continue to apply to and bind Employee even if Employee is transferred at some time from Employer or any of its affiliates or subsidiaries to another of Employer or any of its affiliates or subsidiaries. Employee acknowledges further that Employer's affiliates are intended beneficiaries of this Agreement.

D.   **Modification and Waiver.** No provision of this Agreement may be amended, modified or waived unless such amendment, modification or waiver is agreed to in writing and signed by Employee and by a duly authorized officer of Employer (other than Employee). No delay or omission by the parties in exercising any right under this Agreement will operate as a waiver of that or any other right. No waiver or consent given by a party on any occasion will be construed as a bar to or as a continuing waiver of any right on any other occasion.

E.   **Construction.**   This Agreement shall be deemed drafted equally by both Employer and Employee.   The headings in this Agreement are only for convenience and are not intended to affect construction or interpretation. Any references to paragraphs, subparagraphs, sections or subsections are to those parts of this Agreement, unless the context clearly indicates to the contrary. Unless the context clearly indicates to the contrary, (i) the plural includes the singular and the singular includes the plural; (ii) "includes," "including" and other similar words are each "without limitation"; (iii) "herein," "hereof," "hereunder" and other similar compounds of the word "here" refer to the entire Agreement and not to any particular paragraph, subparagraph, section or subsection; and (vi) all pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the entities or persons referred to may require.

F.   **Severability.**   If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provisions shall be modified to the

minimum extent necessary to comply with applicable law and the intent of the parties. If any provision of this Agreement, or application of it to any person, place, or circumstances, shall be held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect. Employee and Employer agree that, except as may be otherwise set forth in Section 10.B., the arbitrator or court of competent jurisdiction is expressly authorized to modify any unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as its deems warranted to carry out the intent and agreement of the parties as embodied herein to the maximum extent of the law.

G.      **Entire Agreement.**     This Agreement sets forth the entire agreement and understanding between Employer and Employee relating to the subject matter herein and, as of the Effective Date, supersedes all prior discussions between the parties. Employee understands and acknowledges that (i) no other representation or inducement has been made to Employee, (ii) Employee has relied on Employee's own judgment and investigation in accepting employment with Employer, and (iii) Employee has not relied on any representation or inducement made by any officer, employee or representative of Employer.     Employee understands and agrees that any subsequent change or changes in Employee's duties, salary or compensation will not affect the validity or scope of this Agreement.

H.      **Counterparts.**  This Agreement may be executed by facsimile or other electronic transmission and in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one agreement binding on the parties.

EMPLOYEE HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS.  EMPLOYEE ACCEPTS THE OBLIGATIONS THIS AGREEMENT IMPOSES WITHOUT RESERVATIONS.  NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO EMPLOYEE TO INDUCE THE ENTRY INTO THIS AGREEMENT THAT ARE NOT EXPRESSLY CONTAINED HEREIN.  AT THE TIME OF SIGNING, EMPLOYEE HAS COMPLETELY DESCRIBED IN SUFFICIENT DETAIL ON EXHIBIT B ANY EMPLOYEE PRE-EXISTING INTELLECTUAL PROPERTY.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the parties have agreed to and accepted this Agreement as of the Effective Date.

EMPLOYEE                                   [BYTEDANCE INC.]

_____          _____
Employee Signature

Yintao Yu_____          By:_____
Employee Name (Please Print)

                                           Title:_____

*[Signature page for Confidentiality and Inventions Assignment Agreement]*

**EXHIBIT A**

FORM OF TERMINATION CERTIFICATE

This is to certify that I do not have in my possession, nor have I failed to return, any Employer Materials or other documents, material, equipment or other property belonging to Employer.

I further certify that I have complied with and will continue to comply with all the terms of the Employee Confidentiality and Inventions Assignment Agreement which I signed.

I further agree that, in accordance with the Employee Confidentiality and Inventions Assignment Agreement, I will preserve as confidential and not use any Confidential Information or other information which has or could have commercial value or disclosure of which could be detrimental to the interests of Employer, whether or not such information is identified as Confidential Information by Employer.

Signed: _____

Dated: _____8/30/2017_____

**EXHIBIT B**

1. The following is a complete list of all inventions, confidential information, work product or other materials or Intellectual Property Rights relevant to the subject matter of my employment with Employer that have been made, discovered, conceived, first reduced to practice or developed by me or jointly with others prior to my employment by Employer that I desire to remove from the operation of the Employee Confidentiality and Inventions Assignment Agreement except as provided in Section 2.C.

   ___   No Intellectual Property.

   ___   See below:  Any and all Intellectual Property regarding:

   ___   Additional sheets attached.

2. I propose to bring to my employment the following materials and documents of a former employer:

   ___   No materials or documents

   ___   See below:

Date: 8/30/2017          Employee Signature:

## EXHIBIT C

**California Labor Code § 2870**

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    (2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.